UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LEE JOHNSON, | No.  2:24-cv-2891 AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| SANJAY AGARWAL, et al., | |
| Defendants. | |

Plaintiff is a state inmate at the California Health Care Facility ("CHCF") proceeding without counsel in a civil rights lawsuit pursuant to 42 U.S.C. § 1983.  Pending before the court are plaintiff's Third Amended Complaint (ECF No. 51) and several miscellaneous motions (ECF Nos. 60-65) which the court construes as motions for preliminary injunction.

I.      Background

Before the court could screen the initial complaint, plaintiff filed a first amended complaint ("FAC").  ECF No. 17.  The FAC alleged that defendants Sanjay Agarwal, plaintiff's primary care physician at CHCF, and unnamed (Doe defendant) nurses violated plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution as well as the Americans with Disabilities Act ("ADA").  Id.  Specifically, plaintiff alleged that when his breathing machine broke, defendant Agarwal discontinued plaintiff's prescription for a breathing machine without consulting a respiratory specialist or relying on diagnostic data.  Id. at 4.  He further alleged that the Doe defendant nurses followed defendant Agarwal's treatment plan

1

instead of the correct treatment plan.  Id. at 4-5.

Upon screening the FAC, the court found that plaintiff adequately stated an Eighth Amendment medical deliberate indifference claim against Agarwal but no other claims against Agarwal or the Doe defendants.  ECF No. 25 at 4-5.  Plaintiff was advised that his FAC failed to state a claim against the other defendants because "Plaintiff does not allege that Doe defendants were aware that the treatment plan they were following was incorrect and nonetheless continued to follow it," and plaintiff did not allege facts reflecting his own complaints that would have put the Doe defendants on notice that he was "suffering from a serious medical need or that failure to take further action would put him at risk of serious harm."  Id. at 4.  To the extent plaintiff was alleging that he was denied appropriate nursing care and/or accommodations in the form of assistance to transfer him to and from his toilet, wheelchair, and bed, "he states a cognizable claim but has not named a proper defendant."  Id.  Plaintiff was therefore given the option to proceed on his Eighth Amendment claim against defendant Agarwal or amend the FAC to cure the deficiencies.  Id. at 5, 7.  Plaintiff chose to amend the complaint.  ECF No. 26.

On March 7, 2025, plaintiff filed a second amended complaint ("SAC"), in which he did not name Agarwal as a defendant but asserted retaliation and medical deliberate indifference claims against fourteen other named defendants.  ECF No. 29 at 1-3.  When he filed a request for copies on April 25, 2025, plaintiff also expressed his intention to file a third amended complaint ("TAC").  ECF No. 31.  Over the next several months, the court granted plaintiff numerous extensions of time to file a TAC that included all of his claims in a single pleading and complied with the federal and local rules.  ECF Nos. 32, 36, 42, 48, 50.

On September 26, 2025, plaintiff filed the TAC asserting claims against sixteen named defendants: Dr. Sanjay Agarwal; Nursing Shift Leader and Registered Nurse ("R.N.") Cyril Payopay; R.N. Jeffrey Policarpio; R.N. Simonette Capuras, R.N. Liu Weihong; R.N. Sergio Diez; R.N. Jonalyn Martinez; D.C.P. Alex Farhat; Medical Administrator Ben Bassie; Chief Medical Physician Malakkala Navanhushana; Chief Medical Executive Anise Adams; Associate Warden Kim Petersen; Ombudsman Brian Uden; Muhammad Nureshi; "RN 2 Lawrence;" and "ADA [Coordinator] Williams."  ECF No. 51 at 1.  He subsequently filed several notices regarding the

2

medical treatment he has been receiving from defendants since he filed the TAC (ECF Nos. 60, 61, 62, 64), as well as a motion to bring criminal charges against defendants (ECF No. 63) and a motion for medical intervention (ECF No. 65).

II.      Statutory Screening of Third Amended Complaint

         A.   Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

////

////

////

3

B. Factual Allegations of the Third Amended Complaint[1]

1. Claim One - Deliberate Indifference to Serious Medical Needs

Claim One of the TAC alleges that defendants Dr. Agarwal and the other named defendants acted with deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment rights. ECF No. 51. Specifically, plaintiff alleges that when he was transferred to the CHCF, he already had a treatment plan in place for his numerous diagnoses, which included advanced chronic obstructive pulmonary disease ("COPD") with chronic hypoxia and acute recurrent exacerbation, oxygen dependency, post inflammatory fibrosis of the lungs caused by Covid 19 infection, restrictive lung disease, obstructive sleep apnea, bronchiectasis, chronic cough with sputum production, nontuberculous mycobacterium colonization, and two hernias. Id. at 5. However, plaintiff's new primary care provider at CHCF, Dr. Agarwal, drastically altered plaintiff's treatment plan without consulting appropriate specialists. Id. at 5-6. Specifically, plaintiff claims Dr. Agarwal disagreed with his diagnosis of COPD, decreased plaintiff's oxygen treatment to "as needed/intermediate," decreased his Lasix medication, and stopped his prescriptions for Zofran and nitroglycerin without consulting with other pulmonary, cardiovascular, infectious disease, or vascular specialists before implementing these changes. Id. at 6-7, 13-14. Plaintiff alleges these changes to his treatment plan resulted in serious symptoms and put him in constant fear for his life. When part of plaintiff's "non-invasive trilogy ventilator AVAP" went missing and defendants' efforts to locate the missing part were unsuccessful, plaintiff was advised that Dr. Agarwal did not believe plaintiff needed the missing part. Id. at 12-13. Similarly, plaintiff alleges that he advised defendants Agarwal, Payopay, Policarpio, Sergio, Diaz, Simonette, Capuras, Bassie, and Malakkala that he was taking prescribed iron for his severe

---

[1] The court will not consider the additional factual allegations contained in plaintiff's "supplement" to the TAC, dated April 6, 2026 (ECF No. 60), or notices regarding medical treatment dated April 4, 2026 and April 17, 2026 (ECF Nos. 61-62, 64), which largely reiterate plaintiff's concerns regarding the course of treatment he is receiving from his physicians and medical staff at CHCF. Plaintiff has been repeatedly reminded by the court that "the TAC must include every claim, and every defendant plaintiff intends to make a claim against in this case" and that the court will not refer to other standalone documents to make his complaint complete. ECF Nos. 36 at 2-3, 42 at 2. Plaintiff is advised that any future filings which appear to be attempts to supplement the operative complaint will be stricken.

4

anemia that may require a blood transfusion, but Dr. Agarwal discontinued this prescription.  Id. at 7-8.  Plaintiff claims that Dr. Agarwal also did not take his symptom complaints seriously, as demonstrated by plaintiff's contraction of cellulitis and a staph infection from a pressure and/or bed sore that was only discovered by a floating nurse after defendants failed to credit his pain complaints.  Id. at 14.

Plaintiff alleges that he "spoke with all the noted defendants mentioned, RNs and shift leads, that this PCP is going to kill me" and yet none of them intervened to prevent Dr. Agarwal from modifying plaintiff's treatment plan and instead continued to carry out his instructions.  Id. at 7.[2]  Dr. Alex Farhat, for example, told plaintiff he did not have diagnoses of COPD or asthma, and that plaintiff did not fit the criteria for compassionate release for non-terminal patients.  Id. at 7.  When plaintiff complained to the other defendants about the changes to his treatment plan, defendants assured him they were following Dr. Agarwal's orders and he "knows what he is doing, he is a good doctor."  Id. at 6.

With respect to Associate Warden Kim Paterson, plaintiff alleges that she responded to his appeals and medical grievances but refused to provide his requested relief or investigate his claims of harassment.  Id. at 8.  Similarly, plaintiff claims that he spoke with ADA Coordinator Williams, who advised plaintiff that his concerns relating to Agarwal were medical issues and not ADA-related concerns.  Id. at 11.

Plaintiff also asserts that he presented his complaints to defendants Singh, Adams, Ombudsman Brian Uden, and Chief Physician Malakkala, but they each failed to override Dr. Agarwal's recommended course of treatment.  Id. at 9-10.  Similarly, although Dr. Nureshi told him (with RN Diez in the room) that "he will see what he can do" about a missing part for plaintiff's ventilator, "I never heard from him nor did things change."  Id. at 10.

Plaintiff asserts that the nursing staff defendants "were not innocent in allowing these things and bad treatment as even they have access to my file as treatment team members as

---

[2]  For example, plaintiff alleges that R.N.s Payopay and Policarpio, at Dr. Agarwal's direction, removed his oxygen to find out if he would suffer a respiratory attack.  Id. at 7.

treating staff." Id. at 11.[3]  Eventually, plaintiff's fear of Dr. Agarwal was so severe that defendants referred plaintiff for "urgent" mental health treatment for his paranoid behavior. Id. at 15.[4] Although the TAC is not entirely clear, it appears that plaintiff may have eventually been removed from Dr. Agarwal's care due to plaintiff's mental health symptoms for at least some period of time. Id.

### 2. Claim Two - Retaliation

Plaintiff's second claim alleges retaliation by the defendants. Id. at 18-22.  Specifically, plaintiff alleges that he filed multiple healthcare appeals between June 2024 and February 2025 regarding the substandard care he was receiving, and also lodged complaints with the California Board of Medicine, Inspector General, Office of Internal Affairs, Ombudsman's Office, and Prison Law Office. Id. at 18.  Following these complaints, plaintiff alleges Dr. Agarwal commanded RN Policarpio not to order the repair of plaintiff's broken ventilator or oxygen machine until plaintiff agreed to speak with Dr. Agarwal, given plaintiff's refusal to interact with him. Id. at 18.  Dr. Agarwal similarly declined to order plaintiff a particular "mattress, heal cushions, bi-pap machine, ventilator, and oxygen machine repair or trade in" to help treat plaintiff's conditions. Id.  Plaintiff further alleges that during a meeting with a representative from Elk Grove to discuss the possibility of compassionate release, Dr. Agarwal stated that he would not agree to compassionate release because it would require him to falsify medical records as plaintiff did not want to get better. Id. at 19.  Plaintiff further alleges that defendants Agarwal, Payopay, and Policarpio purposefully delayed responding to plaintiff's call light to "give me time to do it myself then assist" in retaliation for his complaints. Id.  Plaintiff states, "the retaliations were small and seemed nothing" but impacted how he was treated by other hospital staff as well. Id.

---

[3]  Plaintiff mentions being left on the toilet for a prolonged period of time by an unnamed certified nursing assistant on more than one occasion and having to wait approximately five to eight minutes before staff responded to his bed alarm to move him back to his bed. Id.  However, plaintiff reiterates that the CAN who left him there for a prolonged period "didn't do it on purpose." Id.
[4]  The third claim of plaintiff's complaint, which he titled "medical care," simply re-states his allegations in claims 1 and 2.  ECF No. 51 at 23-26.

Finally, plaintiff notes that after he persistently "refused the pulmonary function test" that Dr. Agarwal ordered to verify his COPD diagnosis because plaintiff wanted to "wait until I speak with a pulmonary specialist" before taking the test, defendants entered "negative progress notes" in his chart. Id. at 20. Plaintiff asserts that he also began refusing to allow R.N.s Payopay or Policarpio to touch or treat him due to their "conflict of interest, retaliation, not having communication to deal with me in any way." Id. at 21.

### C. Claims for Which a Response Will be Required

After conducting the screening required by 28 U.S.C. § 1915A(a) and construing the TAC liberally in plaintiff's favor, the court finds that plaintiff has adequately stated a valid Eighth Amendment claim for deliberate indifference against Dr. Agarwal and several additional members of his treating medical team.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).

Construed liberally, plaintiff's allegations regarding Dr. Agarwal's rejection of plaintiff's COPD and other serious diagnoses and preexisting course of treatment recommended by his treating specialists, including constant access to oxygen, are sufficient to demonstrate a serious medical need. Plaintiff further alleges that he directly informed other members of his medical

7

team of the serious risk to his health presented by Dr. Agarwal's actions, including Chief Medical Physician Malakkala Navanhushana, Dr. Farhat, Dr. Nureshi, and R.N.s Payopay, Policarpio, Capuras, Weihong, Diez, and Martinez, but they disregarded the imminent risk to his safety.[5] Plaintiff claims that as part of his treatment team, these defendants each had access to his medical records, which included his prior diagnoses and recommended course of treatment from his treating specialists, and were therefore aware that plaintiff was now receiving inadequate care for his serious conditions when they followed Dr. Agarwal's instructions. Id. at 23. At the screening stage, plaintiff's allegations are sufficient to support that each member of his treatment team acted (or failed to act) with knowledge of the serious risk of harm perpetuated by their actions or inactions.

Accordingly, plaintiff's allegations in the TAC are sufficient at the screening stage to state claims for deliberate indifference against defendants Agarwal, Navanhushana, Farhat, Nureshi, Payopay, Policarpio, Capuras, Weihong, Diez, and Martinez.

        D.     Failure to State a Claim

        1.   Claims Relating to the Grievance Process

To the extent that plaintiff alleges his constitutional rights were violated when defendants Associate Warden Kim Paterson and ADA Coordinator Williams reviewed his medical complaint or grievance forms and failed to provide requested relief, he fails to state a claim for relief.

Prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Accordingly, the prison grievance procedure does not confer any substantive constitutional rights upon inmates and actions in reviewing and denying inmate appeals generally do not serve as a basis for liability under § 1983. Id.; George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). As the Seventh Circuit has observed:

---

[5] The TAC does not adequately identify "RN 2 Lawrence" in either the caption or body of the TAC, or describe any interactions plaintiff had with this individual. "RN 2 Lawrence" will therefore not be included as a named defendant.

> Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

George, 507 F.3d at 609-10.

Under these principles, plaintiff's allegations that defendants Paterson Williams failed to investigate or intervene after processing plaintiff's medical complaints and grievances cannot state a claim for relief as a matter of law.

### 2. Retaliation Claims

Although plaintiff's allegations regarding the course of treatment he received from Dr. Agarwal and certain members of his treatment team are adequate at the screening stage to state an Eighth Amendment claim, he does not adequately plead a separate First Amendment retaliation claim against any of these defendants because he does not allege that their actions chilled the exercise of his First Amendment rights in any way.  As a matter of constitutional law, retaliation claims involve violations of First Amendment speech rights.  A viable First Amendment claim for retaliation must establish the following five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  The facts set forth in the second claim of the TAC complaint do not support a retaliation claim against any of the named defendants.

### 3. "Medical Negligence"

Although plaintiff includes the words "medical negligence" in his Third Amended Complaint, he does not make any specific factual allegations relating to state law negligence or medical malpractice claims any against particular defendants.  In any event, with respect to any state law negligence or medical malpractice claims plaintiff may be attempting to make, he has failed to state claims for relief because he has not alleged compliance with the Government Claims Act.  See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004) (for

9

claims against the state, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint); Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller").

### 4. Supervisory Liability Claims

Finally, the allegations of the TAC fail to state any claim against Ombudsman Brian Uden, Medical Administrator Ben Bassie, Chief Medical Executive Anise Adams, or Associate Warden Kim Petersen based on their supervisory responsibilities. "A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Rodriguez v. County of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks omitted). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.'" Id. (brackets and citation omitted).

As a threshold matter, Ombudsman Uden is not a prison administrator with the authority to direct action by plaintiff's medical care team or supersede the authority of other CDCR officials. Accordingly, plaintiff's TAC does not state a constitutional claim against Ombudsman Uden as a matter of law. Plaintiff has also not sufficiently linked defendants Bassie,[6] Adams, or Petersen to any asserted violation of his constitutional rights by demonstrating their personal involvement or knowledge of the constitutional violation by those under their supervision. See Jett, 439 F.3d at 1098 (prison administrators "are liable for deliberate indifference when they knowingly fail to respond to an inmate's request for help" (citations omitted)). The TAC does not contain facts that would support liability under a supervisory theory by showing these defendants directed, encouraged, or tolerated any acts by those they supervised that amounted to deliberate

---

[6] Without more, the fact that plaintiff claims to have made defendant Bassie aware of his anemia and need for iron supplements is not sufficient to establish a constitutional violation.

indifference.

5.  No Leave to Amend

The undersigned finds that, as set forth above, several of plaintiff's allegations in the TAC fail to state a claim upon which relief may be granted.  Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  In this case, however, plaintiff has already been given several opportunities to amend the complaint, advised what kind of information he needed to provide, and granted several extensions of time to file his TAC.  Given the additional facts provided by plaintiff, it does not appear that further amendment would result in cognizable constitutional claims.  As a result, granting plaintiff additional leave to amend at this stage would be futile and those claims should be dismissed without leave to amend.

By separate order, the court will direct service of the TAC on defendants Agarwal, Navanhushana, Farhat, Nureshi, Payopay, Policarpio, Capuras, Weihong, Diez, and Martinez with respect to plaintiff's Eighth Amendment deliberate indifference claims.  It will be recommended that all other claims and defendants be dismissed.

III.     Motions for Preliminary Injunction (ECF Nos. 63 and 65)

A.  Plaintiff's Allegations

Plaintiff has filed a "motion to bring criminal charges" against Dr. Agarwal, in which he reiterates the concerns in his TAC that his current course of treatment presents a serious risk of imminent bodily harm.  ECF No. 63.  As in his prior motion for preliminary injunction (ECF No. 33), plaintiff alleges that the treatment he is receiving constitutes retaliation for exposing wrongdoing by the CHCF medical staff and he asks to be transferred to a different facility with different care providers.  Id. at 7.  Similarly, in a recently filed "motion for medical intervention," plaintiff asked the court to prevent defendant Agarwal from treating him, as well as another doctor, Chauhdri, who is not a named defendant in this case.  ECF No. 65.  Because plaintiff alleges that Chauhdri is named as a defendant in another pending lawsuit (2:26-cv-01193-EFB), plaintiff asks the court to order a different primary care provider, Ahmad Ahmadzia, M.D., to treat him until he can be transferred elsewhere.  Id. at 3.

11

B. <u>Legal Standards</u>

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate '[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008)) (internal quotations omitted).  The Ninth Circuit's sliding-scale test for a preliminary injunction has been incorporated into the Supreme Court's four-part <u>Winter</u> standard.  <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011) (explaining that the sliding scale approach allowed a stronger showing of one element to offset a weaker showing of another element).  "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the <u>Winter</u> test are also met." <u>Id.</u> at 1132.

The plaintiff, as the moving party, bears the burden of establishing the merits of his or her claims.  <u>See Winter</u>, 555 U.S. at 20.  Additionally, "[t]hose seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." <u>Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.</u>, 736 F.3d 1239, 1251 (9th Cir. 2013).

Because the function of a preliminary injunction and temporary restraining order is to preserve the status quo pending a determination on the merits, <u>Chalk v. United States Dist. Court</u>, 840 F.2d 701, 704 (9th Cir. 1988), there is heightened scrutiny where the movant seeks to *alter* rather than maintain the status quo, <u>Dahl v. HEM Pharms. Corp.</u>, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").  "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 879 (9th Cir. 2009) (quoting <u>Anderson v. United States</u>, 612 F.2d 1112, 1115 (9th Cir. 1979)).

Additionally, in cases brought by prisoners involving conditions of confinement,

12

any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).

### C.  Plaintiff Has Not Established a Right to Such Extraordinary Relief

Because plaintiff seeks an order from the court requiring defendants to do or stop doing an act, the court construes these motions as motions for preliminary injunctive relief.  ECF Nos. 63, 65.  As plaintiff was previously advised, any motion for preliminary injunction should identify who plaintiff seeks to enjoin, what specific actions or inactions he seeks to enjoin, and demonstrate that a preliminary injunction is warranted under the Ninth Circuit four-factor test set forth above.

A district court has no authority to grant relief in the form of a preliminary injunction where it has no jurisdiction over the parties.  Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) (per curiam) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.") (citation omitted).  To the extent plaintiff seeks an injunction against non-defendants, the court does not have jurisdiction over those individuals unless plaintiff provides facts showing that they are acting "in active concert or participation" with the defendant.  Fed. R. Civ. P. 65(d)(2); Zenith Radio Corp. v. Hazeltine Rsch., Inc., 395 U.S. 100, 112 (1969) ("[A] nonparty with notice cannot be held in contempt until shown to be in concert or participation.").

Here, to the extent that plaintiff's motions for preliminary injunction ask the court to enjoin Dr. Chauhdri or Dr. Ahmadzia, who are not named defendants in this action, the court does not have jurisdiction over these parties.  To the extent that plaintiff asks the court to enjoin Dr. Agarwal from providing medical treatment due to the pendency of this litigation or order plaintiff's transfer to a different facility, the court does not find that plaintiff has satisfied the four-part Winter standard to warrant such extraordinary relief.  While the undersigned does not doubt that plaintiff's fears for his health are sincere, at this early stage of the litigation plaintiff has not demonstrated that he is likely to succeed on the merits of his Eighth Amendment claims

against Dr. Agarwal and the other named defendants.  See Stormans, 586 F.3d at 1127.

Finally, to the extent that plaintiff seeks the initiation of criminal charges against Dr. Agarwal (ECF No. 63), the court has no authority to grant the requested relief.  Prosecutorial power rests exclusively in the executive branch.  See Clinton v. Jones, 520 U.S. 681, 718 (1997).

For all these reasons, the undersigned recommends that plaintiff's motions for preliminary Injunction (ECF Nos. 63, 65) be denied.

IV.    Plain Language Summary of this Order for a Pro Se Litigant

Some of the allegations in your third amended complaint state claims and some do not. Your deliberate indifference claims against defendants Agarwal, Navanhushana, Farhat, Nureshi, Payopay, Policarpio, Capuras, Weihong, Diez, and Martinez state claims for relief and will require an answer by those defendants.  The remaining claims, including your retaliation and negligence claims, do not state a claim for relief and it is being recommended that those claims be denied without leave to amend.  The court is also recommending that your motions for preliminary injunction be denied.  The district judge will make the final decision.

V.    Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1.    The allegations of deliberate indifference in the third amended complaint state a claim for relief against defendants Agarwal, Navanhushana, Farhat, Nureshi, Payopay, Policarpio, Capuras, Weihong, Diez, and Martinez.  Service is appropriate for these defendants.

2.    E-service on defendants will be directed by separate order.  Plaintiff should not complete service paperwork for these defendants unless ordered to do so by the court.

IT IS FURTHER RECOMMENDED that:

1.    Plaintiff's retaliation and state law negligence claims against all the named defendants, as well as his Eighth Amendment claims against defendants Bassie, Adams, Petersen, Uden, Williams, and "RN 2 Lawerence," be dismissed without leave to amend.

2.    Plaintiff's motions for preliminary injunction (ECF Nos. 63, 65) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

14

after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 29, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE